(72 South. 218)

No. 20546.

MEYERS et al. v. MEYERS et al.

(May 9, 1916. Rehearing Denied June 30, 1916.)

*(Syllabus by the Court.)*

1. MARRIAGE ☞37 — VALIDITY — RATIFICATION.

A slave marriage entered into in the state of Georgia *held* to have been ratified and confirmed by the continued cohabitation of the parties after their emancipation.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 108; Dec. Dig. ☞37.]

2. PARTITION ☞9(1)—AGREEMENT OF PARTIES—EFFECT.

Where a succession was opened, administered, and closed by final account, and all the

real estate inventoried as belonging to the same was turned over to the children of the decedent, who by informal partition divided the land among themselves, *held*, that three of the children, retaining title to their respective allotments and suing as sole heirs could not treat the succession proceedings and partition as absolute nullities, but must resort to a direct action.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 26–31; Dec. Dig. ☞9(1).]

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Action by John Meyers and others against Gilbert Meyers and others. From a judgment for defendants, plaintiffs appeal. Affirmed.

Blanchard & Smith, of Shreveport, for appellants. Herndon & Herndon, of Shreveport, for appellees.

LAND, J. This is a petitory action to recover a number of tracts of land situated in the parish of Caddo. Plaintiffs' claim of title is based on the allegation that they are the only legitimate children and heirs at law of Gilbert Meyers (colored), who died in the year 1912, and of his predeceased wife, Lucy, and that said property belonged to the community which existed between their father and mother.

It appears from the petition that the same property had been inventoried in the succession of Gilbert and Ann Meyers, and, it is alleged, had been illegally and erroneously partitioned between the three plaintiffs and the defendants, as heirs of the said Gilbert Meyers.

The petition assails the mortuary proceedings on various grounds of nullity, among others, that Ann Meyers, was a living person; that an undivided half interest in the property belonged to the succession of their mother, Lucy Meyers; that the purported probate sale was a sham and simulation; that, in fact, the property was bid in by the attorney for the administrator in his own name, and was by him subdivided and conveyed by separate deeds to the plaintiffs and the defendants; and that the plaintiffs accepted the deeds made to them in error and ignorance of their legal rights.

Defendants answered that they were the legitimate descendants of Gabriel Meyers by his marriage with Ann Eades, while both were slaves, ratified by their cohabitation after emancipation.

Defendants further pleaded that plaintiffs had consented to and participated in the administration of the succession, the sale of the property to the attorney, and the partition of the same by deeds to the plaintiffs and defendants as heirs of the deceased.

The judgment below recognized the children of Gilbert and Ann Eades Meyers as lawful heirs of Gabriel Meyers, Sr., deceased, reserving to plaintiffs whatever rights they had to attack the mortuary proceeding in another action. A new trial was granted as to the said reservation, and on a second hearing that part of the judgment which relegated the plaintiffs to another action was reinstated and made the judgment of the court. Plaintiffs appealed from both judgments.

The petition for administration represented that both Gilbert Meyers and Ann Meyers had recently died in the parish of Caddo, the said Gilbert leaving an estate consisting of real and personal property, the personal property being community between him and the said wife, Ann Meyers. As the said Ann, the last wife of the decedent, subsequently appeared in the proceedings as "widow in necessitous circumstances," it is manifest that her succession was prematurely opened. It follows that the administration embraced only the succession of Gilbert Meyers, Sr., represented to be the sole owner of the real estate inventoried, and consisting of 1,165.48 acres of land, appraised at $5 per acre, and making a total valuation of $5,824.40. The administration 30 days after his qualification obtained an order of court

for the sale of the property, both real and personal, belonging to the succession for the purpose of paying debts. At the sale all of the real estate was adjudicated to Mr. E. B. Herndon.

The surviving wife was allowed $1,000 reserved by law to the widow left in necessitous circumstances. In May, 1912, the administrator filed his final account which was duly homologated. In his accompanying petition the administrator alleged that the succession had been fully administered, debts paid, and property turned over to the heirs.

It appears that Mr. Herndon purchased the real estate of the decedent at the probate sale, but divided the property among the heirs by separate deeds of sale, in three of which the plaintiffs appeared as purchasers, and two of them, Frank and John Meyers, also appeared as witnesses to several other deeds.

The plaintiffs in participating in this informal partition recognized the defendants as children of the same father, and as such entitled to a share of his estate. This question of defendants' heirship raised in the petition is the important issue in the case. The presumption is that this issue, depending as it does on the credit to be attached to the testimony of witnesses, given in open court, was correctly decided by the trial judge.

The three plaintiffs in this suit testified that their father called and treated the defendants as his children, and that as such they participated in the partition. They, however, testified that their father had only two wives.

Julia Richmond, a colored woman in her seventy-fifth year, testified that she was born in Georgia, and that she and Gilbert Meyers were "raised" by the same master, one Dr. Eades; that Gilbert married a woman named Ann "in Georgia, in the hall of the white folks' house; they brought the preacher there and they were married;" that the witness was a "great big girl," and was present at the marriage; that she came with Gilbert and Ann to this section of the country, and she continued to know them until they died; and that Gilbert Meyers always recognized Ann Meyers as his wife, and her children as his own.

Andrew Jackson testified that Gilbert Meyers and Ann Eades lived together as man and wife in Caddo parish from the latter part of 1865 to December, 1869, when she died.

We gather from the testimony of Mr. Herndon and of Mr. Trosper, and from other evidence, that the plaintiffs claimed, at the time of the partition, that they were entitled to their mother's half and an equal portion with the other children of their father's half of the property. We infer from the evidence that their claim was recognized and considered in the division of the real estate among the heirs.

Plaintiffs' evidence in rebuttal is, in substance, as follows:

Hodge: Three years after the surrender Gilbert Meyers was living with Ann Eades in his house, and with one Sofia in the kitchen, and had children by both. Never heard either woman called as his wife.

Margaret Jackson: Gilbert Meyers lived with Ann Eades. Don't know that he lived with Sofia, but he had a child by her. She lived in another place. Never heard Ann Eades was his wife; supposed that they took up together. He acknowledged his children; never heard him acknowledge they were born in wedlock; never claimed Ann as his wife; only took up together. On cross-examination the witness said that Ann lived with Gilbert as man and wife, and after her death, and after his second marriage, he had a child by Sofia. On re-examination the same witness testified, in effect, that she knew nothing of the relations

existing between the parties, except that they lived together.

Green Jackson's testimony is of the same vague and unsatisfactory character. Plaintiff closed, and the defendant introduced Isaac McDowell, who testified that during the Civil War of 1861–65, he resided near the house of Gilbert Meyers and Ann Eades, and that on one occasion Gilbert said "that was his wife and those were his children." The last witness in the case admitted that she did not know what she was testifying about.

That the defendants are the children of Gilbert Meyers and Ann Eades is not disputed; and, if the testimony of Julia Richmond is to be believed, the parties, while slaves, were married in the state of Georgia, with the consent of their master. The trial judge in his written opinion says:

"This witness Julia Richmond made a very favorable impression on the court. She is an old-time negress without any of the guile and smartness of some of the latter-day ones. She impressed the court as telling the truth, and we see no good reason for doubting her."

We see no good reason for disturbing this finding of the fact.

[1] That these parties after their emancipation lived together in the same manner as man and wife until the death of Ann in December, 1869, is conclusively shown by the evidence. The children of this union were given the surname of Meyers, one of them was also given the name of Gilbert, and they were born and reared in their father's house, just as were the plaintiffs, the children of his second marriage. That they were always considered in the family as legitimate is shown by the potent fact that the plaintiffs divided their father's estate with them. The slave marriage was ratified and confirmed by the continued cohabitation of the parties after emancipation. See Sterrett v. Samuel, 108 La. 346, 32 South. 428, and also Ross v. Ross, 34 La. 860, and authorities therein cited.

[2] With record evidence before us showing that the succession of Gilbert Meyers has been opened, administered upon, debts and expenses paid, and closed by final account and surrender of the real estate to the children of the decedent, and that they have partitioned said property among themselves, we are of opinion that such proceedings and partition cannot be treated as absolute nullities by the plaintiffs, who participated in the partition, and accepted title to lands, representing their supposed shares in the property. If plaintiffs have suffered any legal injury from the succession proceedings, sale, or partition, their right to attack the same by direct action is reserved in the decree of the lower court.

Judgment affirmed.